UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

WILLIAM RASHARD SMITH,

    Petitioner,

v.                                       Case No.  3:16cv633-MCR-CJK

FLORIDA DEPARTMENT OF
CORRECTIONS SECRETARY,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, providing relevant portions of the state court record.  (Doc. 24).  Petitioner replied.  (Doc. 26).  The matter is referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that petitioner is not entitled to federal habeas relief.

## BACKGROUND FACTS[1] AND PROCEDURAL HISTORY

Just before 1:00 a.m. on July 25, 1998, petitioner shot Kenneth Johnson with a sawed-off pump shotgun outside Ray's Soul City in Pensacola, Florida. Petitioner fired the gun from a blue Ford Taurus he was driving. As Mr. Johnson described:

> He like stopped the car and he was like trying to get out, but the car wouldn't stop because it was not in gear or something and it kept like rolling. And he was like stepping with the car, and then he bounced back in the car and stopped the car and then got out with a shotgun and started shooting . . . at the front of the club.

(Doc. 24, Ex. J2, p. 74).[2] As petitioner fired, he and Johnson looked one another "dead in the eye." (*Id*.). Johnson was struck in the head by a shotgun pellet and taken to a nearby hospital. Doctors decided the pellet should not be removed. Although Johnson survived with no permanent disability, the pellet remained in his head the rest of his life. Johnson never wavered from his identification of petitioner as the shooter.

Derrick DeVaughn witnessed the shooting at Ray's Soul City and identified petitioner as the shooter. DeVaughn recalled that just after pumping the shotgun but

---

[1] The background facts are drawn from the trial transcript, viewed in the light most favorable to the prosecution. (Doc. 24, Ex. J2 (Volume I of trial transcript); Ex. J3 (Volume II of trial transcript). Pinpoint citations are provided only for quotations.

[2] References to exhibits are those provided at Doc. 24.

*Case No. 3:16cv633-MCR-CJK*

before firing the first shot, petitioner announced, "Nigger, this is Little Bill". (*Id.*, p. 93). Petitioner's street name is "Little Bill."

After the shooting, Derrick DeVaughn drove to Diego Circle. Terry Ewing accompanied DeVaughn. DeVaughn stopped the car on Diego Circle after Antanidus Sullivan flagged him down. Ewing got out and talked to Sullivan. As the two were talking, petitioner approached them brandishing what Ewing described as a pump shotgun. Petitioner pointed the gun at Ewing and asked why he was in the neighborhood. Mr. Ewing and petitioner had words. Petitioner got more agitated and, unable to diffuse the situation, Ewing informed petitioner he (Ewing) was leaving. Ewing walked to DeVaughn's car, opened the passenger door and got in the car. As Ewing pulled the door closed, petitioner fired shots at Ewing's door, striking the door just below the window and along the side. DeVaughn sped off. Law enforcement's investigation led to petitioner's arrest.

At trial, Mr. Johnson identified petitioner as the man who shot him outside Ray's Soul City. Mr. DeVaughn identified petitioner as the shooter at Ray's Soul City and on Diego Circle. Mr. DeVaughn also testified that the shotgun petitioner used to shoot into his car was the same type of shotgun petitioner used at Ray's Soul

City.  Mr. Ewing identified petitioner as the man who pointed the gun at him in Diego Circle and shot at DeVaughn's vehicle.

In addition to identifying petitioner as the shooter, Mr. DeVaughn identified petitioner's girlfriend's car – a blue Ford Taurus – as the car petitioner drove when he opened fire outside Ray's Soul City.  Shortly after the Diego Circle shooting, DeVaughn and Ewing led law enforcement to the home where petitioner lived.[3]  The blue Ford Taurus was parked outside the home.  Petitioner's girlfriend confirmed to law enforcement that the blue Ford Taurus was her car and that petitioner used it the evening of July 24, 1998, and into the next morning.

Shotgun shells recovered from inside the driver's side of the Ford Taurus were the exact type and caliber of the shells recovered from the shooting scenes at Ray's Soul City and Diego Circle – Federal No. 6, 20-gauge. When petitioner was arrested on July 25, 1998, just after the shootings, he admitted to law enforcement that he drove the Ford Taurus and fired the shotgun earlier that morning, but he did not directly admit to firing the shots at Ray's Soul City and Diego Circle.  Law

---

[3] At that time, DeVaughn and Ewing had identified petitioner as the shooter and knew where he lived.

enforcement asked petitioner where he left the shotgun, and petitioner led them to a trail along Diego Circle. The shotgun was never recovered.

After hearing all the evidence, including petitioner's testimony, a jury found petitioner guilty of aggravated battery with a firearm (shooting Mr. Johnson), and shooting at an occupied vehicle (Mr. DeVaughn's car). (Ex. J1, pp. 31-35 (jury verdicts). The trial court adjudicated petitioner guilty, conducted a sentencing hearing and sentenced petitioner as a habitual felony offender to concurrent terms of 30 years in prison. (*Id*., pp. 38-55 (sentencing hearing transcript), pp. 69-75 (judgment)).[4] The Florida First District Court of Appeal (First DCA) affirmed on March 20, 2000, per curiam and without opinion. *Smith v. State*, 754 So. 2d 31 (Fla. 1st DCA 2000) (Table) (copy at Ex. J6). Petitioner began his now 18-year quest to overturn his convictions.

On September 5, 2000, petitioner filed his first *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Ex. I1, pp. 1-20). The state circuit court summarily denied relief (Ex. I1, pp. 21-25), and the First DCA affirmed per curiam without opinion. *Smith v. State*, 799 So. 2d 1030

---

[4] Where a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom-most center of the page.

*Case No. 3:16cv633-MCR-CJK*

(Fla. 1st DCA 2001) (Table) (copy at Ex. I4). The mandate issued December 5, 2001. (Ex. I5).

On February 13, 2002, petitioner filed his first *pro se* motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a). (Ex. C1, pp. 1-22). The state circuit court summarily denied relief (Ex. C1, pp. 23-37), and the First DCA affirmed per curiam without opinion. *Smith v. State*, 826 So. 2d 290 (Fla. 1st DCA 2002) (Table) (copy at Ex. C2). The mandate issued September 10, 2002. (Ex. C3).

On December 14, 2004, petitioner filed a *pro se* petition for writ of habeas corpus alleging ineffective assistance of appellate counsel. (Ex. F1). The First DCA denied the petition on January 27, 2005. *Smith v. State*, 894 So. 2d 287 (Fla. 1st DCA 2005) (Table) (copy at Ex. F2). Rehearing was denied on March 1, 2005. (Ex. F4).

On May 10, 2007, petitioner filed a second *pro se* Rule 3.800(a) motion. (Ex. D1). The state circuit court summarily denied relief (Ex. D2), and the First DCA affirmed per curiam without opinion. *Smith v. State*, 974 So. 2d 390 (Fla. 1st DCA 2008) (Table) (copy at Ex. D3). The mandate issued March 4, 2008. (Ex. D4).

On October 25, 2010, petitioner filed a third *pro se* Rule 3.800(a) motion. (Ex. G1, pp. 1-7). The state circuit court summarily denied relief (Ex. G1, pp. 8-37), and the First DCA affirmed per curiam without opinion. *Smith v. State*, 59 So. 3d 113 (Fla. 1st DCA 2011) (Table) (copy at Ex. G2). The mandate issued April 26, 2011. (Ex. G5).

On September 26, 2014, petitioner filed a second *pro se* Rule 3.850 motion, claiming he had newly discovered evidence of his innocence. (Ex. B1, pp. 35-59). Specifically, petitioner alleged that Antanidus Sullivan and Terry Ewing would testify he was not the person who shot at Derrick DeVaughn's vehicle in Diego Circle. (Ex. B1, pp. 35-59). The state circuit court granted an evidentiary hearing and appointed postconviction counsel. (*Id.*, pp. 90-92). After hearing, the circuit court denied relief, finding Sullivan's and Ewing's postconviction evidentiary hearing testimony not credible. (Ex. B1, pp. 93-140 (evidentiary hearing transcript); Ex. B3, pp. 458-514 (order denying postconviction relief with attachments)). The First DCA affirmed per curiam without opinion. *Smith v. State*, 203 So. 3d 162 (Fla. 1st DCA 2016) (Table) (copy at Ex. B7). The mandate issued September 27, 2016. (Ex. B10).

On June 15, 2015, petitioner filed a pleading titled "Defendant's Emergency Motion to Vacate His Habitual Felony Offender Sentences . . . ." (Ex. E1). The state circuit court summarily denied relief on November 30, 2015. (Ex. E2). Petitioner did not appeal. (*See* Exs. A1, A2).

Petitioner filed his federal habeas petition on November 18, 2016, raising three grounds for relief: (1) the trial judge in petitioner's second Rule 3.850 proceeding was biased; (2) the trial judge in petitioner's second Rule 3.850 proceeding erred in determining that Sullivan's and Ewing's postconviction evidentiary hearing testimony was not credible; and (3) the prosecutor at petitioner's criminal trial failed to disclose "a known material witness with exculpatory evidence". (Doc. 1).

Four days after filing his petition in this court, on November 22, 2016, petitioner filed a third *pro se* Rule 3.850 motion alleging he was actually innocent because in an unsworn affidavit dated November 10, 2016, Clyde Williams took responsibility for the Diego Circle shooting. (Ex. K). The state circuit court granted an evidentiary hearing and appointed postconviction counsel for petitioner and separate counsel for Mr. Williams. (Ex. K1; Ex. K2). At the hearing, petitioner's postconviction counsel called Mr. Williams to testify. Mr. Williams declined to

answer any questions, invoking his Fifth Amendment right to remain silent. (Ex. K2 (evidentiary hearing transcript)). The circuit court denied postconviction relief. (Ex. K3). Petitioner's appeal from that order is pending. *See* http://onlinedocketsdca.flcourts.org, Case No. 1D17-5187.

PETITIONER'S CLAIMS

Ground One     "Judge did not maintain his position as a neutral arbiter within the authority of the court." (Doc. 1, p. 5 in ECF).

Petitioner's allegations supporting this claim read in total:

> The trial judge has made an improper extensive statement that presents he had great disdain and prejudice against recantation evidentiary hearing giving Defendant objective fear [o]f an unfair and prejudicial decision of the court.

(*Id*.). Petitioner indicates he raised this issue in his second Rule 3.850 proceeding. (*Id*., p. 6 in ECF). In his state postconviction appeal, petitioner argued that the following question by the postconviction trial judge at the close of the hearing was improper:

> THE COURT: All right. One question, Mr. Thomas [petitioner's postconviction counsel]. And I've got to refamiliarize myself with these 3.850s.
>
> I mean, it comes down to the credibility – a lot of it comes down to the credibility of the witnesses today. I guess my question is, how can I find them credible today when 20 years ago when it was closer to the event, they told – or at least Mr. Ewing told the opposite story. I

> mean, that's – I mean, I guess if that's the standard, then we're going to have – we might as well set up – you know, we're going to need to have a whole bunch more courtrooms and judges and that kind of thing because that just opens the door for anybody in any case at any time whether it was five years ago or 15 years ago, you come in and say, well, I'm recanting my story. I mean, I don't know that that's what this was intended for.
>
> But anyway, I guess my question is, how can you – what was your argument? How can I corroborate what he said today, or is it just something I just have to accept?

(Doc. 24, Ex. B1, pp. 133-34 (postconviction evidentiary hearing transcript); Ex. B4, pp. 4-7 (petitioner's appellate brief)).

Respondent argues that even assuming to petitioner's benefit his allegations present a claim of constitutional dimension, the claim is procedurally defaulted. (Doc. 24, pp. 8-13). Respondent argues in the alternative that giving petitioner the benefit of <u>all</u> doubt by assuming the federal claim was properly exhausted and adjudicated on the merits in state court, petitioner fails to meet 28 U.S.C. § 2254(d)'s demanding standard. (Doc. 24, pp. 24-29).

Petitioner's allegations, construed liberally and in the most generous light, claim the trial judge in his second postconviction proceeding was biased in violation of the Constitution. Petitioner does not claim the judge who conducted his criminal trial was biased; rather, the judge who conducted his postconviction evidentiary

hearing was biased. The Eleventh Circuit addressed an identical claim in *Quince v. Crosby*, 360 F.3d 1259 (11th Cir. 2004). There, Mr. Quince claimed the state postconviction trial judge's failure to recuse himself from the proceeding deprived him of a constitutional right. The court held that claim was not cognizable on federal habeas review, explaining:

> In *Spradley v. Dugger*, we held that where a petitioner's claim goes to issues unrelated to the cause of petitioner's detention, that claim does not state a basis for habeas relief. 825 F.2d 1566, 1568 (11th Cir. 1987) (involving claims as to errors at a hearing on the petitioner's 3.850 motion); *see also Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotes omitted); *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989) (agreeing with the majority view and holding that "a petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings"). Therefore, while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief. *See Spradley*, 825 F.2d at 1568.

*Id*. at 1261-62; *see also Alston v. Dep't of Corr., Fla.*, 610 F.3d 1318, 1326 (11th Cir. 2010) (holding that habeas petitioner's challenge to state postconviction proceeding was not cognizable on federal habeas review); *Carroll v. Sec'y, DOC, Fla. Attorney Gen.*, 574 F.3d 1354, 1365-66 (11th Cir. 2009) ("[A] challenge to a state collateral proceeding does not undermine the legality of the detention or

imprisonment – i.e., the conviction itself – and thus habeas relief is not an appropriate remedy."). Petitioner's judicial bias claim does not state a basis for federal habeas relief, and should be denied without reaching the merits or respondent's procedural default defense.

Ground Two       "Court has erred. The recantation testimony is at least [as] reliable as that offered at trial." (Doc. 1, p. 7 in ECF).

Petitioner's allegations supporting Ground Two read in total:

> The trial judge's denial order is error as given the totality of the circumstances of the case a new trial on the strength of Mr. Ewing's and Mr. Sullivan's testimony.

(*Id*.). Petitioner asserts he raised this issue in his second Rule 3.850 proceeding. (*Id*., pp. 7-8 in ECF).

Respondent argues, again, that even assuming to petitioner's benefit that his allegations present a claim of constitutional dimension, the claim is procedurally defaulted. (Doc. 24, pp. 8-10, 14-15). Respondent asserts in the alternative that giving petitioner the benefit of all doubt by assuming the federal claim was properly exhausted and adjudicated on the merits in state court, petitioner fails to meet 28 U.S.C. § 2254(d)'s demanding standard. (Doc. 24, pp. 29-32).

The court liberally construes petitioner's claim as challenging the state postconviction court's rejection of his newly discovered evidence claim (involving

Antanidus Sullivan's and Terry Ewing's postconviction testimony) on the ground that the decision was based on an unreasonable credibility determination (Sullivan's and Ewing's testimony lacked credibility). The reasonableness of the state court's credibility determination matters, however, only if petitioner's substantive claim is cognizable on federal habeas review.

The substantive claim adjudicated by the state postconviction court – and raised here – is that newly discovered evidence (Sullivan's and Ewing's postconviction testimony) proves petitioner's innocence. A freestanding claim of actual innocence, however, is not cognizable on federal habeas review. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."); *Townsend v. Sain*, 372 U.S. 293, 317 (1963) ("[T]he existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."), *overruled on other grounds*, 504 U.S. 1 (1992); *Cunningham v. Dist. Attorney's Office for Escambia Cnty.*, 592 F.3d 1237, 1272 (11th Cir. 2010) (""[T]his Court's own precedent does not allow habeas relief on a freestanding innocence claim in non-capital cases[.]");

*Swindle v. Davis*, 846 F.2d 706, 707 (11th Cir. 1988) ("Newly discovered evidence which goes only to the guilt or innocence of the petitioner is not sufficient to require habeas relief."). This rule "is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Herrera*, 506 U.S. at 400-01.

Petitioner's newly discovered evidence does not bear on the constitutionality of his incarceration. Ground Two provides no basis for federal habeas relief.

Ground Three    "State attorney withheld a material witness[ ] in first trial that was exculpatory evidence for Defendant." (Doc. 1, p. 8 in ECF).

Petitioner's allegations supporting this claim read in total:

> A known material witness[ ] with exculpatory evidence is omitted from the first trial. Ultimately the Office of the State Attorney is responsible for all inculpatory or exculpatory evidence to be presented.

(*Id*.). Petitioner asserts he raised this issue in his second Rule 3.850 proceeding. (*Id*., p. 9 in ECF). Although petitioner's federal petition does not identify the "material witness" at issue, his state postconviction appellate brief identified the witness as Antanidus Sullivan. (Ex. B4, pp. 11-13). Petitioner complained that the State withheld exculpatory evidence by failing to list and call Antanidus Sullivan as a witness in petitioner's trial even though Deputy Martin was aware Sullivan

witnessed the Diego Circle shooting. (*Id.*, p. 13 (arguing a denial of due process at trial "by the State Attorney's omission of a material witness in Mr. Sullivan.")). Petitioner's appellate brief also argued that he was deprived of due process in the postconviction proceeding because the State failed to call Deputy Martin as a witness for questioning about his knowledge of Sullivan as an eyewitness and any pre-trial statements Sullivan made about the identity of the Diego Circle shooter. (Ex. B4, pp. 11-13).

Respondent asserts that even assuming to petitioner's benefit that his allegations present a claim of constitutional dimension, the claim is procedurally defaulted. (Doc. 24, pp. 8-10, 16-18). Respondent argues in the alternative that giving petitioner the benefit of all doubt by assuming the federal claim was properly exhausted and adjudicated on the merits in state court, petitioner fails to meet 28 U.S.C. § 2254(d)'s demanding standard. (Doc. 24, pp. 32-37).

No aspect of petitioner's claim warrants federal habeas relief. To the extent petitioner claims he was denied due process at the postconviction evidentiary hearing when the State failed to call Deputy Martin as a witness, his claim is not cognizable on federal habeas review because it attacks a proceeding collateral to his confinement. *See Alston, supra; Carroll, supra*.

To the extent petitioner claims he was denied due process at trial, his claim fails on *de novo* review. It appears petitioner's complaint is not that the State suppressed evidence, but that the State <u>failed to call Antanidus Sullivan as a trial witness</u>. The Due Process Clause does not require the State to call any particular witness. It is the obligation of the defense to call witnesses on the defendant's behalf.

To the extent petitioner suggests the State failed to <u>disclose</u> Antanidus Sullivan as an eyewitness in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), his claim still fails on *de novo* review. To establish a *Brady* violation, petitioner must prove:

> (1) that the government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

*Baxter v. Thomas*, 45 F.3d 1501, 1506 (11th Cir. 1995) (*quoting United States v. Spagnoulo*, 960 F.2d 990, 994 (11th Cir. 1992)).

The fact that Antanidus Sullivan witnessed the Diego Circle shooting was information petitioner himself already knew or could have obtained with reasonable diligence. Antanidus Sullivan was petitioner's lifelong friend. (Doc. 24, Ex. B1, p.

100). Prior to trial, defense counsel deposed Terry Ewing and asked him to describe the "dude" who flagged down Derrick DeVaughn's vehicle on Diego Circle and conversed with Ewing until interrupted by petitioner wielding the shotgun. Ewing described: "He goes by the name of Nidus. That's his street name. I don't know his real name, but Nidus, that's what they call him, Nidus, Nide-a-boo." (Ex. B1, p. 80). At trial, both Derrick DeVaughn and Terry Ewing identified Antanidus as the person who flagged them down on Diego Circle. (Ex. J2, pp. 97-98, 120). Petitioner, too, affirmed during his trial testimony that it was his friend Antanidus who flagged down DeVaughn and Ewing on Diego Circle. (Ex. J2, p. 209).[5] At no time before, during, or after trial did petitioner or defense counsel assert that the defense was unaware of Antanidus' identity or status as an eyewitness. *See Baxter*, 45 F.3d at 1507 (holding there was no *Brady* violation where the evidence at issue was possessed, or could have been obtained with reasonable diligence, by the defendant

---

[5] During cross-examination, the prosecutor asked petitioner:

> Q [Prosecutor]. Let's talk about Diego Circle. Now, they're driving through and they see Antonitis [sic] Winston standing out there waiving at them or something right? And that's a friend of yours, right?
>
> A [Petitioner]. Yes, ma'am.

(Ex. J2, p. 209). "Antanidus Winston" is Antanidus Sullivan's alias. *See* http://www.dc.state.fl.us/offender, search results for "Antanidus Sullivan".

himself); *United States v. Davis*, 787 F.2d 1501, 1505 (11th Cir. 1986) ("*Brady* rule does not apply if the evidence in question is available to the defendant from other sources"). Petitioner's Ground Three does not warrant federal habeas relief.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (*quoting* 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774 (2017) (*quoting*

*Miller-El*, 537 U.S. at 327). The petitioner here cannot make the requisite showing. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1. That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. William Rashad Smith*, Escambia County Circuit Court Case Nos. 1999-CF-387 and 1999-CF-388, be DENIED.

2. That the clerk be directed to close the file.

3. That a certificate of appealability be DENIED.

At Pensacola, Florida this 13th day of August, 2018.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.